UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LARRY WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01770-TWP-MKK |
| | ) | |
| ARAMARK CORRECTIONAL SERVICES, LLP, | ) | |
| TISCH THOMPSON, | ) | |
| DENNIS REAGLE, | ) | |
| ANDREW COLE, | ) | |
| CHARLIE FOX, | ) | |
| KYLE MCKINNEY, | ) | |
| RACHEL BRUMSFIEL, | ) | |
| CENTURION HEALTH OF INDIANA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT CENTURION HEALTH OF INDIANA, LLC'S
MOTION TO DISMISS**

This matter is before the Court on Defendant Centurion Health of Indiana, LLC's ("Centurion") Motion to Dismiss Plaintiff Larry Warren's ("Mr. Warren") Amended Complaint pursuant to Rule of Civil Procedure 12(b)(6). (Dkt. 60). For the reasons explained below, the Motion to Dismiss, (Dkt. 60), is **denied.**

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This case is one of a series of related cases brought by incarcerated pro se plaintiffs involving conditions of confinement during lockdowns at Pendleton Correctional Facility ("Pendleton") from October 2023 through January 2024 and again from July 2024 through August 2024. The Court's screening order allowed Mr. Warren to proceed on Eighth Amendment and state law intentional infliction of emotional distress ("IIED") claims against Centurion based on the following allegations, summarized from Mr. Warren's Amended Complaint:

1

> Centurion has a practice of denying medical care during lockdowns, which meant that Warren could not receive healthcare during the relevant time period. [Dkt. 15] ¶ 149. Despite knowing about the health issues that Warren suffered because of the above-described conditions, Centurion, Reagle, McKinney, Brumsfiel, Fox, and Cole enforced the practice of restricting access to Centurion's nurses and the medical unit due to the lockdown. *Id.* ¶¶ 65, 147. Warren alleges that these defendants intentionally denied access to punish him and other inmates and to hide their suffering and weight loss. *Id.*, ¶ 65. Warren lost weight—his boxers fit looser and his rib cage became visible. *Id.* When he asked Centurion nurses about receiving healthcare, they told him to put in a healthcare request, but he presumably did not provide care. *Id.*

(Dkt. 19 at 7). Mr. Warren's constitutional allegations proceeded under the theory of municipal liability articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* at 8.

Centurion responded to the complaint by filing a motion to dismiss Mr. Warren's claims under Federal Rule of Civil Procedure 12(b)(6). Mr. Warren responded to the motion, (dkt. 62), and Centurion filed a reply, (dkt. 64).

## II.  **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

To survive a Rule 12(b)(6) motion, the complaint must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court takes "as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Roe v. Dettelbach*, 59 F.4th 255, 261–62 (7th Cir. 2023) (citation omitted)). But the Court is "not bound by legal conclusions couched as factual allegations." *Guerrero v. Howard Bank*, 74 F.4th 816, 819 (7th Cir. 2023).

As the Court explained in its screening order, the Court construes pro se complaints, such as Mr. Warren's Amended Complaint, liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). Indeed, the Supreme Court advised that "a document filed pro se is 'to be liberally construed' . . . and 'a pro se complaint, however inartfully pleaded, *must* be held to less stringent standards than formal

pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasis added)).

### III.    <u>DISCUSSION OF EIGHTH AMENDMENT CLAIM</u>

Mr. Warren proceeds in this case on an Eighth Amendment *Monell* claim against Centurion. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (explaining that private companies that provide essential services to prisoners are treated as municipalities for the purposes of 42 U.S.C. § 1983 and can be sued when their actions violate the constitution). To successfully plead such a claim, Mr. Warren must first show he was deprived of a federal right. *Id*. Then, Mr. Warren must plead facts showing that Centurion's actions plausibly deprived him of the right at issue. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Centurion cannot be held liable under a theory of *respondeat superior*. *Id.* Thus, Mr. Warren must allege that Centurion, "either through an express policy or an implied policy of inaction, took deliberate action that was the moving force behind a constitutional injury." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th Cir. 2022) (quotation marks omitted). At the pleading stage, Mr. Warren does not need to specify a legal theory supporting his *Monell* claim. The Seventh Circuit has "'stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery.'" *Zemlick v. Burkhart*, 164 F.4th 1004, 1016 n.3 (7th Cir. 2026) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)).

Centurion argues that Mr. Warren fails to state a claim for the following reasons. First, he has not identified an underlying constitutional violation attributable to Centurion. (Dkt. 61 at 5–8). Second, Mr. Warren has not identified a Centurion policy, practice, or custom that was the moving force behind the constitutional deprivation, and relatedly, Mr. Warren has not shown that

Centurion had a widespread practice of violating his constitutional rights. *Id.* at 8–11. The Court rejects both arguments.

1.   **Mr. Warren Adequately Alleges that Centurion Violated His Eighth Amendment Right to Healthcare**

Centurion first argues that the Amended Complaint fails to state a claim because it does not allege that Centurion violated Mr. Warren's constitutional rights. (Dkt. 61 at 5). Specifically, Mr. Warren has not alleged that a particular medical provider acted with deliberate indifference toward Mr. Warren's objectively serious medical needs. *Id.* at 5–6. Mr. Warren responded that Centurion imposes a heightened pleading standard and he attempts to supplement the Amended Complaint by attaching healthcare request forms and identifying particular medical providers. (Dkt. 62 at 3–4; dkt. 62-1).

At the outset, Mr. Warren cannot defend the Amended Complaint by supplementing it. If he wishes to add facts to the complaint, he must file a motion to amend the complaint according to Federal Rule of Civil Procedure 15 and Local Rule 15-1. Therefore, the Court does not consider Mr. Warren's exhibits or the additional information from his response because the purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint itself. Even still, Mr. Warren's Amended Complaint, without considering the additional information, adequately pleads an Eighth Amendment violation against Centurion.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle*, 429 U.S. at 103). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must

show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Here, the Amended Complaint satisfies the objective prong. Indeed, Mr. Warren alleges that he suffered from a litany of objectively serious medical needs due to the lockdown conditions—weight loss and starvation as well as "vomiting, nausea, headaches, stress, sleep deprivation, exacerbated PTSD, anxiety, and depression, paranoia, lethargy, muscle aches, muscle pain, and muscle fatigue which did exacerbate his hemorrhoids, and had bloody stools." *See* dkt. 15 ¶ 38; *see also id.* ¶¶ 41, 50, 76, 147. These are "physical injur[ies] that a reasonable doctor or patient would find important and worthy of comment or treatment" and they would "significantly affect[] an individual's daily activities." *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (cleaned up). Importantly, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Here, delaying treatment for something like bloody stool, vomiting, nausea, and mental health conditions such as PTSD could lead to unnecessary pain and future injury. Thus, Mr. Warren's complaint adequately alleges objectively serious medical needs.

Second, Mr. Warren adequately pleads the subjective component. Although Centurion is correct that Mr. Warren may not simply make conclusory allegations and "threadbare recitals" of his cause of action, the Amended Complaint does allege facts supporting an inference of deliberate indifference. For one, Mr. Warren alleges that he and many other inmates complained to the IDOC Defendants and Centurion about the conditions of confinement and their alleged injuries, but Centurion's practices allowed nurses and doctors to refuse to treat his and the other inmates'

conditions for months. Dkt. 15 ¶¶ 34, 65, 147. Mr. Warren also alleges that the "practice" at issue—the restrictions on access to the medical ward during lockdowns—was carried out for punitive reasons. He states that Centurion and the IDOC restricted the medical wing for punitive reasons and to purposefully deny inmates the ability to document their medical needs. *Id.* ¶¶ 149–50. This allegation is especially important since deliberate indifference entails the "unnecessary and wanton infliction of pain." *See Estelle*, 429 at 104. Mr. Warren alleges that Centurion, along with the IDOC Defendants, purposefully restricted access to healthcare to cover up his and other prisoners' suffering. At this stage, these allegations suffice to establish that Centurion was deliberately indifferent to Mr. Warren's objective medical needs.

Additionally, Centurion is incorrect that Mr. Warren fails to allege an underlying Eighth Amendment violation because he does not allege that particular medical providers violated his Eighth Amendment right to adequate healthcare. In *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 375–78 (7th Cir. 2017), the Seventh Circuit found that plaintiffs may proceed on a *Monell* claim even when they do not allege that individual medical providers violated the Eighth Amendment. The court explained that "[i]t is somewhat unusual to see an Eighth Amendment case relating to medical care in a prison in which the plaintiff does not argue that the individual medical provider was deliberately indifferent to a serious medical need. But unusual does not mean impossible, and this case well illustrates why an organization might be liable even if its individual agents are not." *Id.* at 378 (internal citations omitted). "[I]f institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible." *Id.*; *see also Murphy v. Wexford Health Sources, Inc.*, No. 22-2561, 2024 WL 962384, at *3 (7th Cir. Mar. 6, 2024) (unpublished) ("Contrary to Wexford's assertion on appeal, Wexford could be liable for an unconstitutional policy even if its clinicians are not individually liable for any constitutional

injuries.") (citing *Glisson*, 849 F.3d at 278 and *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)); *Thomas*, 604 F.3d at 304 ("[W]e find unpersuasive the County's argument that it cannot be held liable under *Monell* because none of its employees were found to have violated Smith's constitutional rights.").[1]

### 2. Mr. Warren Alleged that Centurion's Policy to Restrict Access to the Medical Wing Caused the Constitutional Violation

Centurion also argues that Mr. Warren has not pled a particular policy, practice, or custom that was the moving force behind the deprivation of medical care. (Dkt. 61 at 8–11). In a *Monell* claim, "[t]he central question is always whether an official policy, however expressed (and we have no reason to think that the list in *Monell* is exclusive), caused the constitutional deprivation." *Glisson*, 849 F.3d at 379. "It does not matter if the policy was duly enacted or written down[.]" In this case, Mr. Warren's Amended Complaint alleges precisely this—a Centurion policy of restricting access to the medical wing during lockdowns that led him to be deprived of medical

---

[1] The cases cited by Centurion do not contradict this principle. For example, in *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495–96 (7th Cir. 2021), the court affirmed the grant of summary judgment on a *Monell* claim because municipal employees did not violate the plaintiff's constitutional rights by entering her home and confiscating her cats. Importantly, *Gaetjens* does not comment on *Glisson* or state that *Monell* claims must allege that individuals personally violated the plaintiff's constitutional rights. Similarly, *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504–505 affirmed the grant of summary judgment and the denial of judgment as a matter of law on *Monell* claims because the individual police officers were found to have not been liable for violating the plaintiff's Fourth Amendment rights. Again, the thrust of the holding is that there was no underlying constitutional violation, not that a plaintiff must necessarily allege that individuals employed by a municipality violated his rights in order to sustain a *Monell* claim. *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that *Monell* does not authorize damages against a municipality when no officer has violated the plaintiff's rights even if regulations authorized the violation of rights); *Hart v. Mannina*, 798 F.3d 578, 596 (7th Cir. 2015) (affirming dismissal of Fourth Amendment claims against supervisors where claims against subordinate officers were dismissed in an action alleging failure to supervise). In contrast, Mr. Warren has adequately alleged an underlying constitutional violation whereby Centurion's policy of restricting access to the medical wing during the lockdown deprived him of his right to adequate medical care under the Eighth Amendment. This is different than the regulation in *Heller* that merely authorized the violation of rights. Here, Mr. Warren is alleging that the policy *did* violate his rights. *See Thomas*, 604 F.3d at 304–05 (distinguishing *Heller*). Although this is not the most common kind of *Monell* claim, the Seventh Circuit has recognized that "an organization might be liable even if its individual agents are not." *Glisson*, 849 F.3d 378.

care. Even construed as a "practice" or "custom," Mr. Warren has sufficiently alleged that the restriction was widespread, affecting inmates all over Pendleton for months in 2023 and 2024. At the pleading stage, these allegations suffice to show that the decision to restrict access to the medical wing was "a true municipal or corporate policy at issue and not just a random event." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (citing *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008)). Furthermore, because prisoners have an Eighth Amendment right to adequate healthcare, a policy or practice of denying medical care during lockdowns would be in and of itself deliberately indifferent to the prisoner's medical needs. *See Dean*, 18 F.4th at 236 ("In some 'rare' cases, the risk of unconstitutional consequences from a municipal policy 'could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)). At this stage, Mr. Warren's allegation that Centurion and the IDOC Defendants restricted access to the medical wing adequately alleges that Centurion's action plausibly violated Mr. Warren's rights, which suffices to state a *Monell* claim.

Centurion also argues that Mr. Warren's claims are speculative and that he "entirely fails to set forth any evidence as to what proper/adequate medical treatment was denied as a result" of restricting access to the medical wing. (Dkt. 61 at 11). As Mr. Warren argues, however, Centurion imposes a heightened pleading standard. (Dkt. 62 at 3–4).[2] Mr. Warren does not have to provide

---

[2] Centurion correctly argues that Mr. Warren is wrong that the Court's screening order forecloses the ability to file a 12(b)(6) motion. Dkt. 64 at 3. He is also wrong that whether he adequately alleges the elements of an Eighth Amendment claim is an issue for summary judgment. At the complaint stage in an Eighth Amendment case, plaintiffs must state factual allegations that support an inference that the defendants plausibly acted with deliberate indifference. Even still, the Court agrees that Centurion's arguments impose a heightened pleading standard. This is evidenced in part by the fact that the majority of Centurion's case law regarding the insufficiency of Mr. Warren's Eighth Amendment claims deal with motions for summary judgment, where the parties have conducted discovery and the plaintiff has the burden of proof, and post-trial motions.

detailed descriptions of Centurion's conduct or extrinsic evidence of his medical conditions and attempts to receive medical care to survive a motion to dismiss. *Childress v. Walker*, 787 F.3d 433, 440–41 (7th Cir. 2015) ("To survive dismissal, a plaintiff's complaint need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . Specific facts are not necessary[.]") (internal quotations omitted); *see also Quinn v. Hardy*, 2013 WL 4826262 at *3–4 (N.D. Ill. Sept. 10, 2013) (denying defendants' 12(b)(6) motion where plaintiff pled that Wexford systematically ignored requests for medical treatment and had a policy of ignoring his and other inmates' requests since "[i]n the context of § 1983, a complaint need not meet a heightened pleading standard to survive a motion to dismiss."). Indeed, he does not even have to identify which particular *Monell* theory of liability he is pursuing. *See Zemlick*, 164 F.4th at 1016 n.3. Discovery might reveal that Mr. Warren did not suffer any of his claimed medical conditions, that Centurion did not restrict access to the medical wing or that any restrictions did not actually harm Mr. Warren, or that Mr. Warren did not complain to Centurion about needing healthcare. Nevertheless, at this stage, Mr. Warren has pled that he suffered from untreated maladies for months due to Centurion's restrictions placed on the medical wing, and that Centurion knew about his and others' complaints and worked with the IDOC Defendants to restrict access to punish them. Taking Mr. Warren's allegations as true—as we must at this stage—these allegations suffice to state an Eighth Amendment claim against Centurion.

### IV.  <u>DISCUSSION OF IIED CLAIM</u>

Centurion argues that Mr. Warren fails to plead facts showing that Centurion's conduct was extreme or outrageous or that Centurion physically or emotionally harmed him. (Dkt. 61 at 12–13). Centurion also states that an IIED claim requires that Mr. Warren plead "direct physical impact." *Id.* Mr. Warren responded that his Amended Complaint states how he suffered both

physically and emotionally from the deprivation of healthcare during the lockdowns. (Dkt. 62 at 5). Mr. Warren also points to additional evidence that he attaches as an exhibit to his response. As stated above, the Court does not consider this evidence because it is not part of the Amended Complaint.

To plead a claim of intentional infliction of emotional distress, Mr. Warren must allege that the defendants "(1) engaged in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress." *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997) (quoting Restatement (Second) of Torts § 46 (1965)); *Bah v. Mac's Convenience Stores*, LLC, 37 N.E.3d 539, 549 (Ind. Ct. App. 2015). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fox v. Franciscan All., Inc.*, 204 N.E.3d 320, 329 (Ind. Ct. App. 2023).

First, Indiana does not require that a plaintiff plead direct physical impact to sustain an IIED claim. *See Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 997 n.7 (Ind. 2006) ("There is also an exception to the physical impact requirement for claims of intentional infliction of emotional distress[.]") (citing *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991)); *K.G. by Next Friend Ruch v. Smith*, 178 N.E.3d 300, 305–06 (Ind. 2021) (explaining the distinction between the impact rules in IIED and NEID after *Cullison* and *Shuamber v, Henderson*, 579 N.E.2d 452 (Ind. 1991)); *Gorman v. I & M Elec. Co.*, 641 N.E.2d 1288, 1290 (Ind. Ct. App. 1994) ("[I]n *Cullison*, the impact requirement was removed for situations in which there has been an intentional trespass) (internal citation modified). Therefore, the Amended Complaint does not fail on those grounds.

Second, the Amended Complaint adequately pleads facts that satisfy the elements of an IIED claim. Mr. Warren alleges that Centurion punitively deprived him of medical care, which can

10

be inferred—at least at the pleading stage—as extreme and outrageous conduct. As seen above, he alleged that Centurion and the IDOC Defendants did so intentionally to punish him and other inmates and to hide their suffering during the lockdowns. Furthermore, he alleges that this deprivation caused severe emotional distress in the form of exacerbating his PTSD, anxiety, depression, and paranoia. *See* dkt. 15 ¶¶ 76, 147.

Centurion is correct that proving the elements of an IIED claim is rigorous. *See J.H. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 19 N.E.3d 811, 819 (Ind. Ct. App. 2014) ("IIED is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind."). Indeed, even showing "malice" and tortious or criminal intent will not suffice to prove IIED. *Id.* Nevertheless, at this point in the case, the alleged facts support an inference that Centurion plausibly denied medical care to incarcerated people, such as Mr. Warren, who solely rely on Centurion for their medical care, for the purpose of punishment and to hide the underlying prison conditions that were causing their healthcare issues (e.g., malnutrition, starvation, and unsanitary conditions). This kind of conduct could plausibly lead "an average member of the community" to exclaim, "'Outrageous!'" *Id.* (citing *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999)). Therefore, Mr. Warren's IIED claim may proceed.

## IV.   CONCLUSION

For the above reasons, Centurion's Motion to Dismiss, Dkt. [60], is **DENIED**.

**IT IS SO ORDERED.**

Date: 6/22/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

LARRY WARREN
230853
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

All ECF-registered attorneys of record via email